UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| MICHAEL MORRIS, <br> Plaintiff, <br><br> v. <br><br> MATTHEW TIVNAN, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    CIVIL ACTION <br> )    NO. 14-40164-DHH |

## ORDER

**March 31, 2017**

Hennessy, M.J.

Defendants Matthew and Brendon Tivnan jointly, and Defendant David Doherty separately,[1] each filed a Motion for Summary Judgment as to Counts III and IV of the Complaint (Docket #45 and #49). Count III alleges excessive force under 42 U.S.C. § 1983 by Matthew Tivnan; and Count IV alleges a failure to intervene by both Brendon Tivnan and David Doherty. (See Docket #1 ¶¶ 13-14). Plaintiff Michael Morris filed an opposition and an Additional Statement of Material Facts in response to both motions. (See Docket #65 and #66). For the reasons that follow, the Motions for Summary Judgment are DENIED as to Count III and GRANTED as to Count IV.

---

[1] Defendant Doherty's motion arguably only concerns Count IV because that is the only claim made against him; however, Doherty also makes arguments regarding the threshold issue of whether Officer Matthew Tivnan used excessive force.

I.  BACKGROUND[2]

On June 17, 2013, at around 10:54 p.m., Plaintiff called 9-1-1 to report a disturbance outside his third-floor apartment on Oread Street in Worcester. (Docket #51 ¶¶ 1-2). Three Worcester police officers, Defendants Matthew Tivnan, Brendon Tivnan, and David Doherty, arrived shortly thereafter.[3] (Id. ¶¶ 3). The disturbance had already dissipated upon their arrival, and the officers subsequently spoke to some residents in the area about the earlier occurrence, among other matters. (Id. ¶ 4). The Plaintiff, after hearing some laughter among the officers and residents, voiced his displeasure from his third-floor window about what he perceived to be a lack of an investigation by the officers into the disturbance. (Id. ¶¶ 5-7). Officer Brendon Tivnan then shined his flashlight up at the window, and in turn at Plaintiff, to see where the voice was coming from, and Plaintiff asked that the flashlight not be shined in his eyes. (Id. ¶ 8). Officer Matthew Tivnan then told the Plaintiff to come downstairs to discuss the issue, as opposed to speaking from his third-floor window. (Id. ¶ 9). Plaintiff agreed and immediately came downstairs to the landing

---

[2]  Consistent with the filing of separate motions, Defendant David Doherty filed a Statement of Undisputed Material Facts in support of his motion (Docket #45) that is separate and distinct from Defendants Matthew and Brendon Tivnan's Statement of Undisputed Material Facts in support of their motion, (Docket #49). Although Plaintiff individually responded to each Statement of Undisputed Facts, Plaintiff filed an identical Statement of Additional Material Facts as part of his opposition to both motions. On September 23, 2016, Defendant David Doherty filed a Partially Assented to Motion to Strike Portions of Plaintiff's Statement of Additional Material Facts. (Docket #72). Defendants Matthew and Brendon Tivnan, however, did not joint Defendant Doherty's motion. (See Docket #72). I granted that Motion to Strike on October 18, 2016. (Docket #74). Thus, although Plaintiff's Statement of Additional Material Facts are the same as to all Defendants, some of those facts have been stricken as to Defendant Doherty but not as to Defendants Matthew and Brendon Tivnan. After a thorough review of the record, I find that both motions can nonetheless be addressed together because the facts subject to the Motion to Strike are essentially only relevant to Defendant Doherty and, even if admitted or stricken as to all parties, would not be material to my determination as described herein.

[3]  Defendants Matthew and Brendon Tivnan are brothers. (Docket #65-1 ¶ 61).

of the stairs up to the apartment building, adjacent to which was a six-foot-tall chain link fence. (Id. ¶¶ 10, 19).

The parties dispute the nature of Plaintiff's demeanor from the window and what occurred next. According to Defendants, before the Plaintiff came downstairs he had been "yelling" and "loudly express[ing]" himself from the third-floor window. (Docket #51 ¶¶ 7-9). Once he came downstairs, Plaintiff continued to yell and was in an "excitable state." (Docket #51 ¶ 11-14). Officer Matthew Tivnan told Plaintiff to quiet down and return inside several times, but Plaintiff refused and created "a significant commotion and disturbance." (Docket #51 ¶¶ 11-14). After several refusals, Officer Matthew Tivnan informed Plaintiff that he was being placed under arrest for disorderly conduct and disturbing the peace. (Docket #51 ¶ 18). Officer Matthew Tivnan put Plaintiff's left arm behind his back and "placed him against a chain link fence . . . in order to immobilize and control [Plaintiff's] body during the arrest process." (Docket #51 ¶ 19) (footnote omitted).

Plaintiff, on the other hand, contends that he was not yelling when he spoke to the police from his window, and that when he came downstairs "there was no loud talking, cursing . . . or other histrionics." (Docket #68 ¶¶ 25-26, 40-41). Instead, Plaintiff, while downstairs, tried to calmly voice his concern about crime in the neighborhood when Officer Matthew Tivnan interrupted him and told him to go back upstairs but Plaintiff refused, saying he would prefer to stay outside. (Docket #68 ¶ 43). Officer Matthew Tivnan told Plaintiff that if he continued to refuse to go back inside he would "go to jail." (Docket #68 ¶ 43). Plaintiff, however, did not immediately go back inside. (Docket #68 ¶¶ 40, 43-44). Officer Matthew Tivnan then grabbed Plaintiff's left arm and smashed Plaintiff's head into a chain-link fence three times while Plaintiff's arm was behind his back. (Docket #68 ¶¶ 46-47). Plaintiff did not sustain any visible injuries nor

3

did he complain of any injuries at the scene or during booking. (Docket #66-1 ¶¶ 30-31). The next day, however, Plaintiff went to a hospital and complained of a headache and stiff neck. (Docket #68 ¶¶ 56-57).

With regard to Defendant Officer Brendon Tivnan, it is undisputed that, aside from when Brendon shined the flashlight at him, Plaintiff and Brendon had no interaction and Brendon did not assist in the arrest. (Docket #66-1 ¶ 33). Right around the time of the arrest, Officer Brendon Tivnan was standing about six feet away from Officer Doherty. (Docket #65-4 at 36).

With regard to Defendant Doherty, it is uncontested that Doherty also did not participate in Plaintiff's arrest and was on a sidewalk between eight and ten feet[4] behind the Plaintiff while Plaintiff was arrested. (Docket #47 ¶¶ 36, 40; Docket #65-1 ¶ 29). During the arrest, Plaintiff was facing away from Doherty and thus was not able to see Defendant Doherty. (Docket #65-1 ¶ 28; Docket #65-4 at 37). Plaintiff stated that he believes Doherty behaved himself in a very professional manner throughout the incident. (Docket #47 ¶ 41).

Notably, irrespective of Plaintiff's alleged insolence, it is undisputed that Plaintiff offered no physical resistance during the arrest process. (Docket #51 ¶ 22; Docket #66-1 ¶ 22; Docket #68 ¶ 67). Additionally, the uncontroverted evidence in the record shows that Officer Matthew Tivnan's arrest of Plaintiff took no more than a few seconds.[5] Supporting this is the testimony of Brendon Tivnan stating that "[t]he arrest of [Plaintiff] took mere seconds," (Docket

---

[4] Plaintiff deposed that he was just guessing how far away Defendant Doherty was because he could not see him. (Docket #65-4 at 37).

[5] Although Plaintiff denies Defendants Matthew and Brendon Tivnan's Statement of Material Fact that "[t]he arrest and handcuffing of the Plaintiff took mere seconds and was routine in all respects," (Docket #66-1 ¶ 29), Plaintiff fails to reference any record evidence controverting the assertion that the arrest took mere seconds; instead, it seems Plaintiff was denying that the arrest was "routine." (See Docket #66 ¶¶ 19, 27).

#51-3 ¶ 12), and the testimony of a percipient witness, Pamela Williams, stating that "[a] few seconds" passed between the time Matthew Tivnan made contact with Plaintiff and handcuffed Plaintiff, (Docket #51-5 at 2). Indeed, Plaintiff himself deposed that the incident "couldn't have been any more than five or ten seconds. Everything was moving pretty quickly." (Docket #65-4 at 38).

As a result of Morris's alleged conduct, criminal charges were brought against Morris for disturbing the peace and disorderly conduct. (Docket #47 ¶ 42). Both charges were reduced to civil infractions, and after a bench trial Plaintiff was ultimately found not responsible for disorderly conduct but responsible for disturbing the peace and assessed a $100.00 fine. (Docket #47 ¶ 42-43).

II.   PROCEDURAL BACKGROUND

On November 10, 2014, Plaintiff filed a complaint against Defendants Matthew Tivnan, Brendon Tivnan, and David Doherty, among others, asserting five claims, including excessive force by Matthew Tivnan (Count III) and failure to intervene by Brendon Tivnan and Doherty (Count IV). (Docket #1). Defendants Matthew Tivnan, Brendon Tivnan, and Doherty, among others, subsequently filed a Partial Motion to Dismiss. (Docket #8). After a hearing on the matter, on October 23, 2015 I issued an Order granting in part and denying in part Defendants' motion. (Docket #29). As a result of that Order, only Counts III and IV remained. (See Docket #29).

On August 5, 2016, Defendant David Doherty, and on the same date Defendants Matthew and Brendon Tivnan, filed Motions for Summary Judgment as to Counts III and IV. (See Docket #45, 49). On September 9, 2016, Plaintiff filed an opposition to both motions. (Docket #66, 67).

III.     STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quotation omitted).

IV.     ANALYSIS

**Count III**

Count III of the Complaint alleges unreasonable or excessive force by Matthew Tivnan. "To establish a Fourth Amendment excessive force claim, a plaintiff must show that the defendant employed force that was unreasonable under all the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009). A claim, as here, that a law enforcement officer used excessive force in making an arrest or seizure is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. O'Connor, 490 U.S. 386, 388 (1989). Whether force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id., at 396. To guide this balancing, the Graham Court expressly identified three factors

to consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[6] Id. (citation omitted). "The calculus of reasonableness also must make allowance for the need of police officers to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." See Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008) (citations and internal quotations omitted).

Defendants Matthew and Brendon Tivnan contend that their motion should be granted because "the real and credible evidence establishes that the incident did not, in fact, occur as [Plaintiff has] alleged." (Docket #50 at 8). Contrary to Defendants' contention, however, and as Plaintiff highlights, credibility determinations are not within the province of the Court on summary judgment motions. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); see also Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1186 (1st Cir. 1996) ("The court, however, must 'not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.'") (quoting Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987)). With that said, a genuine issue of material fact may still exist even if the evidence is contradicted. See Calero-Cerezo v. U.S. Dep't

---

[6] At most, the state court record establishes that Plaintiff was found responsible for the civil infraction of disturbing the peace and did not physically resist arrest. (Docket #47 ¶ 42-43; Docket #51 ¶ 22); cf. Parker, 547 F.3d at 9 ("Though driving while intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault.").

of Justice, 355 F.3d 6, 19 (1st Cir. 2004) ("In this case, as noted, the record as a whole presents many inconsistencies, displaying perspectives that favor in some lights the defendants and in others the plaintiff. So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling.").

Here, a genuine issue of material fact exists relative to the amount of force allegedly used by Defendant Officer Matthew Tivnan. In his Statement of Additional Material Facts, Plaintiff contends, based on his own deposition, that his head was slammed into the fence three times. (Docket #68 ¶¶ 46-47). To the contrary, Defendant Matthew Tivnan states that he did not slam Plaintiff's head into the fence at all; rather, he simply placed him against the fence for immobilization purposes. (Docket #51 ¶¶ 23-24). Not only do the Plaintiff's and Defendant Matthew Tivnan's own versions conflict, but the witnesses' accounts of the incident similarly differ. For instance, one percipient witness, Pamela Williams, testified that Officer Matthew Tivnan pushed Plaintiff's face into the metal fence at the end of the stairway "a couple times." (Docket #66-1 ¶ 15). Another percipient witness, Gretchen Green, testified that she saw Plaintiff's face hit the fence once. (Docket #65-1 ¶¶ 74-75). Defendants Brendon Tivnan and Doherty both testified that they did not observe Plaintiff's face get smashed into the fence three times. (Docket #51 ¶¶ 25-56).

Based on the foregoing, there is clearly conflicting testimony about how many times—if at all—Defendant Matthew Tivnan smashed Plaintiff's face against the fence. There is also conflicting evidence about the quantum of the force—that is, whether Plaintiff was placed against the fence or was smashed into it. These factual disputes are integral to the determination of whether Matthew Tivnan used excessive or unreasonable force against Plaintiff, especially where

it is undisputed that Plaintiff offered no physical resistance during arrest,[7] (see Docket #51 ¶ 22; Docket #68 ¶ 67). Thus, a genuine issue of material fact exists, and the Motion for Summary Judgment as to Count III must be denied.

Defendants additionally assert that they are entitled to qualified immunity. (Docket #50 at 10-12). Qualified immunity protects police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts use a two-part test to determine whether qualified immunity applies: (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the alleged violation. MacDonald v. Town of Eastham, 745 F.3d 8, 12 (1st Cir. 2014). Under the second prong of the test, the analysis involves two questions: (1) whether the legal contours of the constitutional right were sufficiently clear; and (2) whether in the specific factual context of the case, the violation would have been clear to a reasonable official. Id.

The First Circuit has explained that in the context of summary judgment, qualified immunity claims "present thorny analytic problems." Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). The reason for this is "because the summary judgment standard requires absolute deference to the nonmovant's factual assertions (as long as those assertions are put forward on personal knowledge or otherwise documented by materials of evidentiary quality), whereas qualified immunity, when raised on summary judgment, demands deference to the reasonable, if

---

[7] Defendants also argue that the reasonableness of Matthew Tivnan's use of force is evidenced by the fact that Plaintiff sustained little to no injury. (Docket #50 at 1, 4). Although the seriousness of the injury is a relevant consideration in evaluating the reasonableness of force, see Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002), this factor does not negate a dispute as to the amount and manner of the force allegedly used.

mistaken, actions of the movant." Id. at 18-19 (internal citation omitted). To alleviate that tension, courts are to keep these competing standards logically distinct, and "first identify[] the version of events that best comports with the summary judgment standard and then ask[] whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Id. at 19.

In some cases, however, where a genuine issue of material fact principally underlies the determination of the reasonableness of the officer's use of force, courts have chosen not to evaluate a claim for qualified immunity. See Kelly v. Laforce, 288 F.3d 1, 7 (1st Cir. 2002); Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997). I similarly decline to address the qualified immunity claims because the amount and manner of force allegedly used by Defendant Officer Matthew Tivnan is the crux of the case. See St. Hilaire v. City of Laconia, 71 F.3d 20, 24 n.1 (1st Cir. 1995) (stating that when there is a factual dispute "'we doubt the Supreme Court intended this dispute to be resolved from the bench by fiat.'") (quoting Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991)). A determination of the precise amount of force used is especially salient where, as here, the parties do not dispute that the Plaintiff offered no physical resistance during arrest. Thus, while I recognize that it is favored for qualified immunity claims to be resolved short of trial, this case does not present such an opportunity because crucial material facts are significantly in dispute. See Kelly, 288 F.3d at 7-8; Swaine, 117 F.3d at 10. The Motions for Summary Judgment as to Count III are therefore denied.

**Count IV**

Count IV of the Complaint alleges a failure to intervene by both Officer Brendon Tivnan and Officer Doherty. "'An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's excessive force can be held liable under section 1983 for his nonfeasance.'" Riley v. Allandydy, No. 1:10-cv-218-GZS, 2012 U.S. Dist. LEXIS 157683,

at *42-43 (D. Mass. Aug. 24, 2012) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 n.3 (1st Cir. 1990) (alteration omitted)). However, "[a] police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." Gaudreault, 923 F.2d at 207 n.3 (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

The duration of the incident is a salient consideration in evaluating a claim for failure to intervene. See Gaudreault, 923 F.2d at 207 n.3 (concluding that officer had no "realistic opportunity" to prevent an attack where the attack "was over in a matter of seconds"); Riley, 2012 U.S. Dist. LEXIS 157683, at *47 ("To the extent that [plaintiff] faults [the defendant-officer] for failing to intervene with respect to the handcuffing, [plaintiff] fails to explain how [defendant] had any realistic opportunity to intervene given that the entire handcuffing process lasted only seconds."); Norton v. Cross Border Initiative Task Force, No. 06-cv-490-PB, 2009 U.S. Dist. LEXIS 50334, at *30 (D.N.H. June 12, 2009) ("Even assuming that the defendants were on the scene at the time of [plaintiff's] alleged assault, there is no evidence that any of the defendants had a realistic opportunity to intervene in the alleged physical assault because, as [plaintiff] has described the assault, it was sudden, the punching and kicking occurred simultaneously, and it lasted only a few moments."); cf. Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 52 (1st Cir. 2005) (rejecting defendant's reliance on Gaudreault because the jury could have found that the beating of plaintiff "lasted much longer than 'a matter of seconds,' giving [defendant], who was only ten feet away, both time and opportunity to prevent or stop the beating").

Despite my determination that a genuine dispute of material fact exists as to the amount of force used by Officer Matthew Tivnan, I nonetheless find that the Motion for Summary Judgment as to Count IV against Officers Brendon Tivnan and Doherty should be granted because, assuming excessive force was used and drawing all other reasonable inferences in favor of the Plaintiff, the

officers would not have had any realistic opportunity to intervene.  Although the manner and amount of force allegedly used by Officer Matthew Tivnan is vigorously disputed, the parties all agree that regardless of what transpired the entire incident was over in a matter of seconds.  To that end, Plaintiff deposed that "[f]rom the first point of contact to the last point of contact of my face with that fence, it couldn't have been any more than five seconds," and that it was a "quick succession[] of the three times" that he was hit.  (Docket #65-4 at 37).  Plaintiff further described the excessive force as having happened "instantaneously," describing the quickness with the gesture of a snap of his fingers, (see Docket #47 ¶ 30; Docket #65-4 at 37).  That testimony is corroborated by a witness who testified that the incident lasted "a few seconds."  (Docket #47 ¶ 31; Docket #45-4 at 35).  The record elsewhere does not reveal any dispute as to how long the incident took place.  Thus, even assuming that Defendant Officer Matthew Tivnan used excessive force as alleged, neither Officer Brendon Tivnan nor Doherty would have had a realistic opportunity to intervene because the entire incident was over in mere seconds.  The Motions for Summary Judgment as to Count IV are therefore granted.

## CONCLUSION

For all the foregoing reasons, Defendants Matthew and Brendon Tivnan's Motion for Summary Judgment (Docket #49), along with Defendant Doherty's Motion for Summary Judgment (Docket #45), is hereby DENIED as to Count III and GRANTED as to Count IV.


/S/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge